**STATE of Missouri, Respondent,**

v.

**Jerry Edward WHITE, Appellant.**

**No. WD 34622.**

Missouri Court of Appeals,
Western District.

Feb. 7, 1984.

Michael J. Drape, Kansas City, for appellant.

John Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, P.J., and NUGENT and LOWENSTEIN, JJ.

NUGENT, Judge.

Jerry Edward White appeals his conviction by a jury of burglary in the second degree. The judgment is reversed and the defendant is ordered discharged.

Defendant challenges the sufficiency of the evidence to support his conviction. The evidence was as follows:

On August 25, 1982, as he was coming home for lunch, Alvin Fahrmeier saw a brown van leave the driveway of his house with "quite a bit of speed." He quickly entered his house, found that some personal property was missing, and called the sheriff. Fahrmeier could not identify the occupants of the van or its license number, but did state that the van was headed toward the nearby town of Wellington. When he had left his house that day, the doors were closed and secured. Upon his return the garage door was open, as was the door leading to the inside of the house. Items taken from the house were four guns, two jewelry boxes, a silver-plated bowl, some money, three cameras, a lawn mower and a weed eater. Fahrmeier identified photographs of defendant's van as the vehicle he saw speeding from his home. He also testified that he had never seen the van before, that it was moving as fast as it could go leaving his driveway and moving away from him, that it was four to six hundred feet away from his just starting into the road, that he could not tell what "make" it was, what model it was, how many people were in it, or what its license number was.

Fahrmeier's brother-in-law, Frank Lee, at approximately 12:15 p.m. that day observed defendant's brown van in a ditch a quarter of a mile from Fahrmeier's home. He stopped his truck and offered assistance to the man attending the van. After he pulled the van out of the ditch, another man, identified as a Mr. Henson appeared, walking on the road from the direction of the Fahrmeier farm. He was not able to identify the other man as defendant.

Rufus Johnson, a resident of Wellington, testified that on August 25, between 12:30 and 1:00 p.m., he observed defendant's van parked next to the Henson residence in Wellington. He identified defendant as one of the two men "moving something around [in the van]." He then saw Scott

Henson drive a wrecker around the house and park it in front of the van.

Edward Floyd, Jr., and Rodney Branson were present at the Henson trailer on August 25. They placed defendant and his brown van at the trailer on that date between 12:00 and 1:00 p.m. While there they heard a police siren to which Duane Henson reacted by saying to defendant, "We better hide the van, or we'll get caught." Henson drove the van to the back. About ten to fifteen minutes later, defendant and Henson left the premises in a hurry, spinning the tires and throwing gravel. Henson was the driver.

In response to a radio message, State Trooper Dale Schmidt at 12:30 p.m. on August 25, set up a surveillance at an intersection west of Wellington. He stopped defendant's brown van and placed him and Duane Henson (who was driving) under arrest for investigation of burglary. No stolen property was found in the van.

Sheriff Gene Darnell of Lafayette County headed the investigation of the Fahrmeier burglary. On September 9, 1982, much of the stolen property was recovered one and nine-tenths miles north of the Fahrmeier place just off the road into Wellington.

Defendant testified that on August 25 he agreed to go with Duane Henson to Wellington to visit Henson's brother. Because defendant's driver's license had been suspended, Henson drove defendant's brown van. When they arrived in Wellington about 11:00 a.m., Henson dropped defendant off at a restaurant. Henson picked him up later, they went to the Henson residence to see Henson's nephew for thirty minutes and then departed for Kansas City. Defendant denied any involvement in or knowledge of the burglary and denied that Henson made the statement about hiding the van, although he did see Henson pull the van to the back of the house. He admitted pleading guilty in 1974 to a charge of first degree robbery.

■ For his first point on appeal, defendant challenges the sufficiency of the evidence to support his conviction. The evidence of defendant's involvement in the burglary is entirely circumstantial. Thus, the facts and circumstances relied upon to establish his guilt must be consistent with each other and with the hypothesis of guilt. In addition, they must be "irreconcilable and inconsistent with defendant's innocence and must so satisfactorily and clearly point to his guilt as to exclude every reasonable hypothesis of innocence." *State v. Morse*, 515 S.W.2d 608, 610 (Mo.App.1974).

The evidence established the following: (1) that a burglary and stealing occurred at the Fahrmeier residence near Wellington on August 25, 1982; (2) that Mr. Fahrmeier saw defendant's van leave the driveway of his home around 12:20 p.m. that day; (3) that around 12:15 p.m. Frank Lee pulled defendant's van from a ditch a quarter of a mile from the Fahrmeier home; (4) that an unidentified man attended the van in the ditch and a man identified as Duane Henson approached the van on foot; (5) that defendant's van was parked at the Jerry Henson residence in Wellington between 12:30 and 1:00 p.m. that day; (6) that defendant was seen in his van and on the premises at that time; (7) that sometime between 12:00 and 1:00 p.m. a police siren sounded; (8) that, upon hearing the siren, Duane Henson stated to defendant, "We better hide the van, or we'll get caught."; (9) that Henson moved the van; (10) that Henson and defendant left in a hurry later, with Henson driving; (11) that some of the stolen property was recovered off the gravel road almost two miles from the burglarized farm; (12) that defendant was arrested in his van as Henson drove out of the city; and (13) that no stolen property was found in the van.

The evidence did not establish: (1) that defendant was at any time at or near the Fahrmeier house; (2) that defendant was the person attending the van in the ditch; (3) that defendant was ever in possession of the stolen items; (4) that defendant or Henson placed the items in the ditch where they were discovered; (5) that defendant understood, concurred, or otherwise reacted to Henson's statement regarding the van; or (6) that defendant's departure with

Henson as a passenger in the van was an effort to prevent apprehension for the crime.

The evidence is sufficient to support the inference that defendant's van was used in the commission of the crime. To infer from his ownership of the van that he was present and participated in the burglary, however, is not permissible. *State v. Schrum*, 347 Mo. 1060, 1065, 152 S.W.2d 17, 19–20 (1941); *State v. Morse, supra.* Neither may his guilt be inferred from his later presence in the van and his association with Henson. *State v. Woods*, 585 S.W.2d 236, 239 (Mo.App.1979); *State v. Miller*, 536 S.W.2d 524, 527 (Mo.App.1976).

The question is whether defendant's guilt can be inferred from Henson's statement. That inference may arise from a statement of another which tends to incriminate the accused. In Missouri, however, the scope of the tacit admission rule is more limited than it is in other states, *State v. Samuel*, 521 S.W.2d 374, 375 (Mo. 1975) (en banc), and should be applied with caution, *State v. Mullins*, 101 Mo. 514, 14 S.W. 625, 626 (Mo.1890). To invoke the tacit admission rule in Missouri, certain conditions must be met. The statement must have been made in the presence and hearing of the defendant. *State v. Samuel, supra;* it must have been "direct," that is, addressed to the defendant and not to some other person, *State v. Kissinger*, 123 S.W.2d 81, 83 (Mo.1938); *State v. Mullins, supra*, at 627. It must also have been sufficiently accusatory or implicating in its import under the circumstances to evoke a response from an innocent person and a statement to which only a guilty person would remain silent. *State v. Samuel, supra*, at 378; *State v. Thomas*, 440 S.W.2d 467, 470 (Mo.1969); *State v. Kissinger, supra; State v. Walker*, 78 Mo. 380, 388 (1883). Finally, the inference does not arise from a statement made at a judicial proceeding or while the accused was in custody. *State v. Samuel, supra*, at 375; *State v. Rogers*, 573 S.W.2d 710, 718 (Mo. App.1978).

At first glance, Henson's statement would appear to fit into this evidentiary niche. Closer attention to the evidence, however, reveals that the state failed to adduce any evidence at all bearing upon defendant's reaction to the statement. The essence of the tacit admission is in the silence or other conduct significantly acquiescing in the import of the damaging statement. *Senn v. Southern Ry. Co.*, 108 Mo. 142, 18 S.W. 1007, 1009 (1892); *McCarty v. Bishop*, 231 Mo.App. 604, 102 S.W.2d 126, 129 (1937). The prosecution must prove such silence or acquiescing conduct before a tacit admission can be established. *Id.* Here the prosecution offered proof of Henson's statement but then failed to ask either witness what the defendant did or did not do. The simple question and answers, "When Henson said that to defendant, what did defendant do or say?" and "He did not say anything," or, "He nodded in agreement," would have sufficed. Such answers were not sought or elicited by the prosecutor, and there the state missed its chance to establish the tacit admission. Neither witness testified that defendant remained silent, agreed with or indicated understanding of Henson's statement. The only evidence of action at all responsive to Henson's statement was Henson's movement of the van to the back of the house. The evidence does not show that defendant even moved.

The state simply failed to prove that defendant's conduct amounted to a tacit admission. The statement was, therefore, not admissible as evidence of guilt under the tacit admission rule.

The state contends that the statement was admissible and not hearsay because it was offered not for the truth of the matter asserted but to explain the movement and subsequent flight of the van. The evidence does not show that defendant dictated the movement of the van or that defendant's presence in the departing van was to elude capture. He certainly had a right to be in his own van.

Alternatively, the state argues that the statement was admissible as a

statement by a co-conspirator. The fact that an accomplice admits his participation in the commission of a crime is not competent evidence that the defendant too is guilty unless the statement was made in furtherance of a conspiracy or as part of the res gestae. *State v. Browner*, 587 S.W.2d 948, 955 (Mo.App.1979). To be admissible under the conspiracy exception, independent proof of a conspiracy must exist. *State v. McCollum*, 598 S.W.2d 198, 200 (Mo.App.1980); *Glover v. State*, 528 S.W.2d 507, 509 (Mo.App.1975). In the case at bar, the only evidence of conspiracy was the statement of Henson; thus, the statement does not fall within the conspiracy exception.

▮ Assuming that the statement was admissible as part of the res gestae because Henson made it in an effort to avoid apprehension for the crime, nevertheless, absent evidence that defendant reacted to it in a manner that indicated concurrence, understanding or guilty knowledge, the statement could not serve to prove defendant's state of mind. It does not, therefore, support an inference that defendant was seeking to avoid apprehension. His presence in the van, considered with the stronger circumstantial evidence that his companion Henson participated in the commission of the crime, raises a suspicion of his guilt, but it does not prove his guilt beyond a reasonable doubt. *State v. Williams*, 652 S.W.2d 226, 228 (Mo.App.1983). *See also State v. Duvall*, 625 S.W.2d 149 (Mo.App.1981); *State v. Potter*, 530 S.W.2d 268 (Mo.App.1975); *State v. Morse, supra*.

Accordingly, we reverse the judgment and order the defendant discharged.

All concur.